**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE HORSE SOLDIER, LLC,** | : | **CIVIL ACTION NO. 1:13-CV-2892** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DONALD THARPE and BALA CYNWYD, LTD.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is the motion (Doc. 30) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, filed by defendants Donald Tharpe ("Tharpe") and Bala Cynwyd, Ltd. ("Bala Cynwyd") (collectively, "defendants"). Defendants seek dismissal of plaintiff The Horse Soldier, LLC's ("Horse Soldier") amended complaint (Doc. 24), wherein Horse Soldier asserts claims for breach of contract and unjust enrichment against defendants and joins Bala Cynwyd as a defendant. Defendants move in the alternative for a more definite statement of Horse Soldier's breach of contract claim pursuant to Rule 12(e). Additionally, defendants move to strike allegedly immaterial, impertinent, and scandalous matter in the amended complaint pursuant to Rule 12(f). For the reasons that follow, the court will deny the motion in its entirety.

I.     **Factual Background & Procedural History**[1]

Horse Soldier is a Pennsylvania limited liability corporation that collects, displays, and sells antique military artifacts from its store in Gettysburg, Pennsylvania.  (Doc. 24 ¶¶ 2, 5).  Sometime in or near 1995, Horse Soldier learned that certain rare artifacts were for sale (the "artifacts"), including a coat and a cup formerly owned by Civil War general Ulysses S. Grant.  (Id. ¶ 7).  After verifying the authenticity of the artifacts, Horse Soldier "decided to purchase the [a]rtifacts for its business, but needed additional funding."  (Id. ¶ 8).  Horse Soldier approached Tharpe, with whom it had previously conducted business.  (Id. ¶ 9).

Horse Soldier, third party Dennis Lowe, and Tharpe entered into an oral contract (the "agreement") "in which . . . Tharpe agreed to contribute money to help [Horse Soldier] purchase the [a]rtifacts."  (Id. ¶ 13).  Pursuant to the agreement, Tharpe would collect ten percent interest annually on the amount financed until the artifacts were sold, with the maximum interest collected not to exceed $160,000.  (Id. ¶ 14).  The parties determined that the profits from the sale of any and all artifacts would be divided as follows: twenty-five percent to Horse Soldier; fifty-five percent to Tharpe; and twenty percent to Dennis Lowe.  (Id. ¶ 15).

In reliance on the agreement, Horse Soldier purchased the artifacts and transported them to its store in Gettysburg, Pennsylvania.  (Id. ¶ 16).  Three weeks later, Tharpe requested permission to display several of the artifacts at his home in

---

[1] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the complaint as true and view them in the light most favorable" to Horse Soldier.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

Virginia.  (Id. ¶ 17).  Horse Soldier granted Tharpe's request, allowing him to take possession of several of the artifacts "until the parties agreed to sell" them.  (Id. ¶ 18).

Sometime thereafter, Tharpe sold the artifacts in his possession for approximately $1,846,750.  (Id. ¶ 19).  The coat formerly owned by Ulysses S. Grant sold for approximately $1,000,000.  (Id.)  The similarly historied cup sold for approximately $100,000.  (Id.)  Tharpe was obligated under the terms of the agreement to notify Horse Soldier of any pending sale and to pay Horse Soldier twenty-five percent of all profits.  (Id. ¶¶ 20, 22).  Tharpe failed to meet these obligations.  (Id. ¶¶ 19, 21).

Horse Soldier avers that it learned of Tharpe's actions in or around "early 2010," years after the artifacts were sold.  (Id. ¶¶ 24-25).  Upon learning of the sale, Horse Soldier contacted Tharpe to demand its share of the profits.  (Id. ¶ 26).  Tharpe refused to pay Horse Soldier.  (Id. ¶ 27).  The parties then agreed to submit their dispute to a panel of two arbiters and to be bound thereafter by the arbiters' decision.  (Id. ¶ 29).  On June 6, 2011, the arbiters upheld the validity of the agreement, finding that Tharpe owed Horse Soldier twenty-five percent of the profits from the sale of the artifacts.  (Id. ¶ 30).  To date, Tharpe has submitted no portion of the profits to Horse Soldier.  (Id. ¶ 32).

Horse Soldier filed the instant action in the Adams County Court of Common Pleas on October 29, 2013, asserting claims for breach of contract and unjust enrichment against Tharpe.  (See Doc. 1, Ex. A).  Tharpe's counsel subsequently informed Horse Soldier that at all times relevant to the matter *sub judice*, Tharpe was acting on behalf of corporate entity Bala Cynwyd.  (Doc. 24 ¶¶ 10-11).  On

November 27, 2013, Tharpe removed the case to this court on the basis of diversity jurisdiction.   <u>See</u> 28 U.S.C. §§ 1332(a), 1441.  On February 6, 2014, the court granted Horse Soldier's motion requesting leave to file an amended complaint.  (Docs. 20, 23).

Horse Soldier filed its amended complaint on February 6, 2014, joining Bala Cynwyd as a defendant and asserting claims for breach of contract and unjust enrichment against defendants.[2]  (Doc. 24 ¶¶ 33-41).  On March 4, 2014, defendants responded with the instant motion.  (Doc. 30).  Defendants first move to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6).  (<u>Id.</u> at 1-2).  In the alternative, defendants seek a more definite statement of the breach of contract claim pursuant to Rule 12(e).  (<u>Id.</u> at 2).  Further, defendants move to strike allegedly immaterial, impertinent, and scandalous matter pursuant to Rule 12(f).  (<u>Id.</u>)  The motion is fully briefed (Docs. 31, 32, 34) and ripe for disposition.

## II.   <u>Standard of Review</u>

### A.   **Motion to Dismiss**

Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections a party may raise in response to a pleading and the manner in which such defenses and objections are to be asserted.  <u>See</u> Fed. R. Civ. P. 12.  Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When

---

[2] In its amended complaint, Horse Soldier insufficiently pled Bala Cynwyd's principal place of business and thus failed to invoke the court's diversity jurisdiction.  (Doc. 24 ¶ 3).  Upon order (Doc. 38) of the court, Horse Soldier cured this jurisdictional deficiency by filing an appropriate revision on October 1, 2014.  (Doc. 43 ¶ 3).

ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Iqbal, 556 U.S. at 675).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are

sufficient to show a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

### B. Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) states that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). A Rule 12(e) motion must "point out the defects complained of and the details desired." FED. R. CIV. P. 12(e); <u>see</u> <u>also</u> <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 301 (3d Cir. 2006). Rule 12(e) motions "are generally disfavored, and should [be granted only] if a pleading is unintelligible, making it virtually impossible for the opposing party to craft a responsive pleading." <u>Smith v. Miller</u>, No. 1:09-CV-11762010, 2010 WL 2196428, at *2 (M.D. Pa. May 26, 2010) (Conner, C. J.) (quoting <u>Synagro–WWT, Inc. v. Rush Twp.</u>, 204 F. Supp. 2d 827, 849 (M.D. Pa. 2003)); <u>Sabugo–Reyes v. Travelers Indemnity Co. of Ill.</u>, No. CIV.A.99-5755, 2000 WL 62627, at *3 (E.D. Pa. Jan. 14, 2000). If the pleadings satisfy the "Rule 8(a) threshold requirement, a motion for a more definite statement will fail." <u>Kasteleba v. Judge</u>, No. 3:05-CV-1739, 2006 WL 1094544, at *3 (M.D. Pa. Apr. 24, 2006).

### C.       Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the court may strike "any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f). District courts have considerable discretion in deciding a Rule 12(f) motion; in general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims.  See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000); see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed. 2014) ("There appears to be general judicial agreement, as reflected in the extensive case law on the subject, that [Rule 12(f) motions] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.").  "Because striking a pleading is viewed as a drastic remedy, such motions are generally disfavored."  Cluck-U Corp. v. Docson Consulting, LLC, No. 1:11-CV-1295, 2011 WL 3649376, at *1 (M.D. Pa. Aug. 18, 2011) (quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982)).

### III.   **Discussion**

The court will first address defendants' Rule 12(b)(6), Rule 12(e), and Rule 12(f) arguments with respect to Horse Soldier's breach of contract claim.  The court will then address defendants' Rule 12(b)(6) arguments seeking (1) dismissal of Horse Soldier's unjust enrichment claim, and (2) dismissal of all claims against Bala Cynwyd.

### A.   Breach of Contract Claim

### 1.   *Statute of Frauds Defense*

Defendants contend that Horse Soldier's breach of contract claim is subject to dismissal under Rule 12(b)(6) because it is barred by the Pennsylvania statute of frauds governing commercial sales.  (Doc. 31 at 6-8).  Under the statute, contracts for the sale of goods in excess of $500 are unenforceable unless "there is some writing sufficient to indicate that a contract for sale has been made between the parties." 13 PA. CONS. STAT. § 2201.  Horse Soldier contends that the statute of frauds defense is "not an appropriate basis for a Rule 12(b)(6) motion to dismiss." (Doc. 32 at 8).  Horse Soldier further avers that the statute does not apply to the oral agreement at issue because "there was no sale of goods between . . . Horse Soldier and . . . [d]efendants." (Id.)

In Pennsylvania, an affirmative defense shall not be considered at the motion to dismiss stage unless "it presents an insuperable barrier to the plaintiff."  Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 127 (3d Cir. 1997) ("[A] waivable statute of frauds defense may serve as a basis for judgment on the pleadings only when trial would be a fruitless exercise because the plaintiff fails to allege facts in his pleadings that take an oral contract outside the statutory prohibition." (internal quotation marks omitted)).  Whether a statute of frauds argument may properly be raised on a Rule 12(b)(6) motion depends on the substance of the pleadings and the provisions of the applicable statute.  See id. at 128; ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 861-62 (3d Cir. 1994); Power Restoration Int'l, Inc. v. Pepsico, Inc., No. CIV.A.12-1922, 2013 WL 5636618, at *4-5 (E.D. Pa. Oct. 11, 2013) (denying

defendant's motion to dismiss based on an alleged statute of frauds violation because the "pleadings [did] not obviously show . . . an 'insuperable' barrier to recovery").

As a threshold matter, the court must determine whether the agreement at issue falls within Pennsylvania's statute of frauds governing commercial sales. 13 PA. CONS. STAT. § 2201. Article 2 of the Pennsylvania Commercial Code defines a "sale" as "the passing of title from the seller to the buyer for a price." § 2106. Pennsylvania courts have applied this definition narrowly, distinguishing "the sale of goods *from one party to another*," Jeannette Paper Co. v. Longview Fibre Co., 548 A.2d 319, 325 (Pa. Super. Ct. 1988) (emphasis added), from service contracts, brokerage arrangements, and distributor relationships. See, e.g., ITP, Inc. v. OCI Co., 865 F. Supp. 2d 672, 679 (E.D. Pa. 2012) (declining to apply the statute of frauds to a distributor contract because "the breach claimed [was] not about the specific sale of goods but about the relationship between the parties"); Domico v. Downey, No. CIV.A.06-2474, 2007 WL 2108243, at *3 (E.D. Pa. July 19, 2007) (comparing the sale of goods to the provision of services); Jeannette, 548 A.2d at 324 n.1 (contrasting an "agreement for the sale of goods *per se*" with a brokerage arrangement).

The agreement before the court does not cover the sale of artifacts from one contracting party to another.  Rather, the agreement as pled comprises two operative terms: (1) defendants agreed to provide financial support to Horse Soldier in order to enable it to purchase the artifacts; and (2) the parties agreed to sell the artifacts in the future and split the profits.  Neither of these terms dictates the exchange of goods between a buyer and seller certain.  See 13 PA. CONS. STAT. §

9

2106; <u>Jeannette</u>, 548 A.2d at 325.  Whether this arrangement constitutes a service

contract, a brokerage relationship, or something else entirely, it is not a contract for

the sale of goods as defined by the Pennsylvania Commercial Code.  13 PA. CONS.

STAT. § 2106.  Hence, the court concludes that the agreement is not subject to the

statute of frauds.  The court will deny defendants' Rule 12(b)(6) motion to dismiss

Horse Soldier's breach of contract claim to the extent the motion relies on an

affirmative statute of frauds defense.

### 2.   *Essential Contract Terms*

Defendants assert that Horse Soldier's breach of contract claim fails to plead

"critical elements" of the agreement.  (Doc. 31 at 9).  Specifically, defendants object

to the amended complaint's silence regarding "when the contract was formed,

where it was formed, when the items were sold, and when [Horse Soldier] learned

the items were sold."  (<u>Id.</u>)  Defendants argue that the claim should be dismissed

pursuant to Rule 12(b)(6) or, alternatively, that Horse Soldier should be ordered to

file a more definite statement pursuant to Rule 12(e).  (<u>Id.</u> at 10).  Horse Soldier

avers that it has "more than adequately stated a claim for breach of an oral contract

under the federal notice pleading requirements."  (Doc. 32 at 12).

To establish a valid breach of contract claim under Pennsylvania law, a

plaintiff must plead "(1) the existence of a contract, including its essential terms, (2)

a breach of a duty imposed by the contract, and (3) resultant damages."  <u>Ware v.</u>

<u>Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003); <u>J.F. Walker Co. v. Excaliber Oil</u>

<u>Grp., Inc.</u>, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002).  Plaintiffs need not enumerate

every term "in complete detail, [but] every element must be specifically pleaded."

Deron v. SG Printing, Inc., No. 3:11-CV-1934, 2012 WL 3992960, at *6 (M.D. Pa. Sept. 4, 2012) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Under Pennsylvania law, the essential terms of a contract "include time or manner of performance and price to be paid." Morelia Consultants, LLC v. RCMP Enters., LLC, No. 3:10-CV-00432, 2010 WL 7408501, at *10 (M.D. Pa. July 21, 2010); Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956). It is otherwise undecided which additional contractual provisions may be deemed "essential" at the motion to dismiss stage. See, e.g., Guzzi v. Morano, No. CIV.A.10-1112, 2011 WL 4631927, at *10-11 (E.D. Pa. Oct. 6, 2011) (holding that certain unpled employment contract terms such as start and end date, salary, and job responsibilities were not essential given the context of the case). The court is tasked with determining whether the plaintiff's statements of fact describing the alleged terms "allow . . . the plausible inference that the parties entered into a binding contract." It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH, No. 11-CV-2379, 2013 WL 3973975, at *18 (M.D. Pa. July 31, 2013) (denying a motion to dismiss where the complaint failed to state "when, where, [and] under what conditions the purported contract was made, or the particulars of any of its terms"). Courts in this district have granted motions to dismiss when litigants "fail[] to provide any terms outlining what [the contracting parties are] obligated to do." Clark Res., Inc. v. Verizon Bus. Network Servs., Inc., No. 1:10-CV-1119, 2010 WL 4973342, at *7 (M.D. Pa. Dec. 1, 2010); see also Conservit, Inc. v. Deimler's Recycling, Inc., No. 1:14-CV-0296, 2014 WL 4792245, at *6 (M.D. Pa. Sept. 23, 2014) ("The flaw fatal to Conservit's claim, as

11

currently pled, is that it does not identify any obligation in the oral contract.")
(Conner, C. J.).  But when defendants highlight a mere lack of clarity in the
pleadings, cases are typically allowed to proceed to discovery.  See, e.g., It's
Intoxicating, Inc., 2013 WL 3973975, at *18.

Horse Soldier's amended complaint alleges that the parties "entered into an
oral contractual agreement."  (Doc. 24 ¶ 13).  Pursuant to the agreement, (1) Tharpe
contributed money towards Horse Soldier's purchase of the artifacts; (2) Tharpe
was to collect ten percent interest annually on the amount financed until the
artifacts were sold, with the maximum interest collected not to exceed $160,000; (3)
the parties were to divide the profits from the sale of any and all artifacts using a
predetermined ratio; and (4) the parties were obligated to notify one another
regarding any pending or completed sales.  (Id. ¶¶ 13-15, 20).

Horse Soldier clearly pleads the existence of an oral contract and includes
such essential terms as "manner of performance and price to be paid."  See Morelia
Consultants, LLC, 2010 WL 7408501, at *10; Lombardo, 123 A.2d at 666.  The
amended complaint provides minimal detail as to the manner in which the artifacts
were to be sold under the terms of the agreement.  For example, it is unclear
whether Tharpe was authorized to initiate sales negotiations while in possession of
the artifacts.  The amended complaint sheds more light, however, on the parties'
communication obligations under the agreement.  It also plainly states the agreed-
upon apportionment of sale proceeds among the parties.  Although defendants
correctly note that the amended complaint does not fully address "when the
contract was formed, where it was formed, when the items were sold, and when

[Horse Soldier] learned the items were sold," (Doc. 31 at 9), defendants fail to cite authority in support of their contention that such information is required at this early stage of litigation.  (See Doc. 31 at 9-10).  The court is satisfied that Horse Soldier has met its burden of pleading facts sufficient to establish "the existence of a contract, including its essential terms." Ware, 322 F.3d at 225; J.F. Walker Co., 792 A.2d at 1272.

The amended complaint further alleges that Tharpe violated the terms of the agreement by selling certain artifacts without notifying Horse Soldier and by subsequently refusing to pay Horse Soldier its predetermined profit share of twenty-five percent.  (Doc. 24 ¶¶ 19, 23, 34).  Thus, Horse Soldier clearly and directly pleads the manner in which Tharpe breached the agreement.  See Ware, 322 F.3d at 225; J.F. Walker Co., 792 A.2d at 1272.  Additionally, the amended complaint alleges that Horse Soldier suffered damages totaling approximately $380,000 as a result of Tharpe's breach.  (Doc. 24 ¶ 35).

At this stage, Rule 12(b)(6) requires the court to credit the factual allegations of Horse Soldier's amended complaint.  Those facts, taken as true, are sufficient to raise a plausible inference that the parties did indeed enter an oral contract with defined essential terms; that defendants breached the contract; and that Horse Soldier suffered damages as a result.  See Ware, 322 F.3d at 225; J.F. Walker Co., 792 A.2d at 1272.  Hence, Horse Soldier has satisfied its pleading obligation with respect to this claim.  See Deron, 2012 WL 3992960, at *6 (M.D. Pa. Sept. 4, 2012) (quoting Cutillo, 723 A.2d at 1058).  The court will therefore deny defendants' Rule 12(b)(6) motion to dismiss Horse Soldier's breach of contract claim.

Because Horse Soldier has adequately pled a claim for breach of contract, defendants' motion for a more definite statement suffers the same fate. See Kasteleba, 2006 WL 1094544, at *3 ("If a plaintiff has met the Rule 8(a) threshold requirement, a motion for a more definite statement will fail."). For the reasons discussed *supra*, Horse Soldier provides a sufficient level of detail regarding the essential terms of the agreement. The court concludes that the amended complaint is not "so vague or ambiguous that [defendants] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). In other words, defendants will not find it "virtually impossible . . . to craft a responsive pleading." Smith, 2010 WL 2196428, at *2 (quoting Synagro–WWT, Inc., 204 F. Supp. 2d at 849); Sabugo-Reyes, 2000 WL 62627, at *3. Accordingly, the court will deny defendants' Rule 12(e) motion for a more definite statement.

### 3. *Arbitration Averments*

In its amended complaint, Horse Soldier states that on June 6, 2011, two arbiters upheld the validity of the parties' agreement, finding that Tharpe owed Horse Soldier twenty-five percent of the profits from the sale of the artifacts. (Doc. 24 ¶ 30). Defendants contend that Horse Soldier's "averments regarding an opinion by two unknown arbiters is clearly in the nature of settlement discussions pursuant to FED. R. EVID. 408 and should be stricken." (Doc. 31 at 10); FED. R. EVID. 408. Defendants further argue that if Horse Soldier is "seeking to enforce a separate arbitration agreement . . . . [it] should be required to set forth a separate claim for breach of an arbitration agreement." (Doc. 31 at 12). Horse Soldier responds that it is "in a sense, seek[ing] to enforce the decision of the two arbiters," (Doc. 32 at 14),

but that "at the very least, if the arbitration decision is not enforceable, it is relevant factual information showing that the parties were parties to an oral contract . . . which would be relevant to any statute of limitations defense." (Id. at 16).

Under Federal Rule of Evidence 408, evidence regarding settlement negotiations is inadmissible "when offered to prove liability for, invalidity of, or amount of a claim." FED. R. EVID. 408.  Such evidence may be admitted for other purposes, including "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Id.  Although evidentiary rules generally do not govern pleadings, some district courts have employed Rule 408 when granting motions to strike allegations of settlement negotiations.  See, e.g., Ciolli v. Iravani, 625 F. Supp. 2d 276, 285-86 (E.D. Pa. 2009) (striking only the allegations in the complaint that revealed the content of settlement negotiations); Philadelphia's Church of Our Savior v. Concord Twp., No. CIV.A.03-1766, 2004 WL 1824356, at *2-4 (E.D. Pa. July 27, 2004) (granting a motion to strike where the plaintiff failed to show that discovery would yield evidence outside the scope of Rule 408); Kelly v. L.L. Cool J., 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (striking the portions of the complaint that referenced settlement negotiations).  But see, e.g., Mobile Conversions, Inc. v. Allegheny Ford Truck Sales, No. 2:12-CV-1485, 2013 WL 1946183, at *6-7 (W.D. Pa. May 9, 2013) (holding that Rule 408 does not govern pleadings); Providence Town Ctr. LP v. Raymours Furniture Co., No. 09-3902, 2009 WL 3821935, at *5 (E.D. Pa. Nov. 13, 2009) (denying defendant's motion to strike where plaintiff's reference to settlement negotiations may have been admissible at trial for a limited purpose);

15

Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09-2857, 2009 WL 3540786, at *3

(E.D. Pa. Oct. 29, 2009) (declining to apply Rule 408 where settlement discussions

"may have [had] some relevance to [plaintiff's] claim").  In Goldstein v. Elk

Lighting, Inc., No. 3:12-CV-168, 2013 WL 790765 (M.D. Pa. March 4, 2013), this court

declined to strike allegations of settlement negotiations from the plaintiff's

complaint, holding that Federal Rule of Civil Procedure 12(f) governs the pleading

stage, and Federal Rule of Evidence 408 governs at trial.  Id. at *9-10 ("Should

defendants remain firm in their conviction that Rule 408 prohibits this evidence,

they may file a motion *in limine* before trial."); FED. R. EVID. 408; FED. R. CIV. P.

12(f).

Assuming *arguendo* that Horse Soldier's averments regarding arbitration—

that the parties agreed to undergo arbitration and that the panel of arbiters

resolved the dispute in Horse Soldier's favor—fall within the scope of Rule 408, the

court declines to apply the rule at this juncture.  Such arguments must be resolved

at later stages of litigation.  See Goldstein, 2013 WL 790765, at *9-10.  Horse Soldier

contends that its allegations are relevant, at a minimum, as background information

to show that the parties entered into an oral contract.  (Doc. 32 at 16).  The court

concludes that because Horse Soldier's allegations are related to its claims, the

contested allegations are not "redundant, immaterial, impertinent, or scandalous."

FED. R. CIV. P. 12(f); see Goldstein, 2013 WL 790765, at *9-10; Krisa, 109 F. Supp. 2d

at 319.  Thus, the court will deny defendants' Rule 12(f) motion to strike immaterial,

impertinent, and scandalous matter from Horse Soldier's amended complaint.

### B.    Unjust Enrichment Claim

In its amended complaint, Horse Soldier argues that if an oral contract is found not to exist, defendants are liable for unjust enrichment.  (Doc. 24 ¶¶ 37-41). Defendants seek dismissal of Horse Soldier's unjust enrichment claim under Rule 12(b)(6), asserting that defendants were not unjustly benefitted at Horse Soldier's expense because (1) Horse Soldier "did not pay any money to acquire the artifacts;" and (2) the artifacts were not "located at the behest of[] or on behalf of" defendants. (Doc. 31 at 13).  In reply, Horse Soldier avers that it "played a very important role [in the transaction], in that it located . . . [the] rare artifacts through its own business goodwill and industry contacts, and arranged for the[ir] purchase."  (Doc. 32 at 17).

The equitable doctrine of unjust enrichment contemplates that one "who has been unjustly enriched at the expense of another must make restitution to the other."  Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (quoting Binns v. First Nat'l Bank of Cal., Pa., 80 A.2d 768, 775 (Pa. 1951)).  The elements for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant achieved a benefit; and (3) the defendant accepted and retained the benefit under such circumstances that retention would be inequitable without payment of value.  Bunnion v. Consol. Rail Corp., 108 F. Supp. 2d 403, 427 (E.D. Pa. 1999), aff'd, 230 F.3d 1348 (3d Cir. 2000); Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  The crux of an unjust enrichment claim is whether the benefit to the defendant is unjust; the doctrine does not apply simply because the defendant may have benefitted from the plaintiff's actions.  Styer, 619 A.2d at 350-52 (denying

17

attorney's unjust enrichment claim against an attorney who subsequently represented the same client even though the second attorney benefitted from the prior attorney's work).

In its amended complaint, Horse Soldier alleges that defendants were unjustly enriched by its efforts to locate and to arrange for the purchase of the artifacts. (Doc. 24 ¶ 38). Horse Soldier further alleges that defendants realized the benefit of these efforts in the form of profits from the sale of the artifacts. (Id. ¶ 19). The court finds that these factual allegations are sufficient to satisfy the first two elements of a plausible claim for unjust enrichment. See Bunnion, 108 F. Supp. 2d at 427; Styer, 619 A.2d at 350. Horse Soldier further asserts that defendants' acceptance and retention of these profits was inequitable; although defendants relied upon Horse Soldier's efforts to identify and arrange for the purchase of the artifacts, they did not fulfill their promise to divide the proceeds from the subsequent sale of the artifacts with Horse Soldier. (Doc. 24 ¶¶ 23, 38-40).

Defendants contend that this claim must fail because any benefit they received from Horse Soldier was not unjustly retained. (Doc. 31 at 13). Defendants assert that they did not induce Horse Soldier to locate and to arrange for the purchase of the artifacts; rather, defendants aver that Horse Soldier initiated contact between the parties and proposed the initial purchase. (Id. at 14). This argument is unavailing at this stage of litigation. Defendants' retention of the profits from the sale of the artifacts may be inequitable. Horse Soldier alleges that defendants promised to share any and all profits resulting from the sale of the artifacts. (Doc. 24 ¶ 19). At present, defendants refuse to do so, despite allegedly

obtaining these profits as a result of Horse Soldier's efforts.  The court thus finds

that Horse Soldier has set forth factual allegations to support all three elements of a

plausible claim for unjust enrichment.  <u>See</u> <u>Bunnion</u>, 108 F. Supp. 2d at 427; <u>Styer</u>,

619 A.2d at 350.  Accordingly, the court will deny defendants' Rule 12(b)(6) motion

to dismiss Horse Soldier's claim for unjust enrichment.

### C.    Claims Against Bala Cynwyd

In its amended complaint, Horse Soldier joins Bala Cynwyd as a defendant.

(Doc. 24 ¶¶ 3, 36, 41).  Therein, Horse Soldier alleges the following facts:

> 10.    Defendant Tharpe, through his counsel, and only after
> this case commenced, has represented that he was acting through a
> corporate entity called Bala Cynwyd, Ltd.

> 11.    At the time of its dealings with Defendant Tharpe,
> Plaintiff was unaware of Defendant Bala Cynwyd.

> 12.    Defendant Tharpe never held himself out as
> representative, shareholder, director or officer of Defendant Bala
> Cynwyd.

(<u>Id.</u> ¶¶ 10-12).  After stating claims for breach of contract and unjust enrichment

against Tharpe, Horse Soldier alleges:

> 36.    If it is held that Defendant Tharpe was acting for, or on
> behalf of, Defendant Bala Cynwyd, a fact not admitted by Plaintiff, all
> actions of Defendant Tharpe are hereby imputed upon Defendant Bala
> Cynwyd and all allegations are made against Defendant Bala Cynwyd
> in the same manner as they have been against Tharpe.

(<u>Id.</u> ¶¶ 36, 41).

Defendants move to dismiss both claims against Bala Cynwyd.  They assert

that Horse Soldier "fails to plead any facts whatsoever which would create a legal

remedy against Bala Cynwyd, Ltd. on a breach of contract or unjust enrichment

claim." (Doc. 31 at 14).  Specifically, defendants argue that the amended complaint is devoid of facts to indicate "that Bala Cynwyd, Ltd. entered into . . . [a] contract with [Horse Soldier]."  (Id.)  The court disagrees.

As discussed in greater detail *supra*, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  In It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH, No. 11-CV-2379, 2013 WL 3973975 (M.D. Pa. July 31, 2013), the plaintiff asserted breach of contract claims against two parties, pleading substantive facts in support of its claim against the first, and merely pleading in the alternative as to the second.  Id. at *19-20.  The court denied the defendants' Rule 12(b)(6) motion to dismiss, holding that even such minimal pleading is sufficient when the facts alleged raise a plausible inference of the defendant's liability.  Id. at *20.

In the instant action, Horse Soldier pleads its claims in the alternative against Bala Cynwyd.  (Doc. 24 ¶¶ 3, 36, 41).  Importantly, Horse Soldier addresses the brevity of its allegations against Bala Cynwyd in the amended complaint.  Horse Soldier states that it was unaware of Bala Cynwyd's existence until Tharpe's counsel informed Horse Soldier that, at all times relevant to the parties' dispute, Tharpe acted on behalf of Bala Cynwyd.  (Id. ¶¶ 10-12).  Deemed true, these facts provide support for Horse Soldier's breach of contract and unjust enrichment claims against Bala Cynwyd.  As in Maritim, the court finds that Horse Soldier's claims against Bala Cynwyd are sufficient to raise a plausible inference of its

liability.  2013 WL 3973975, at *20.  Accordingly, the court will deny defendants'

Rule 12(b)(6) motion to dismiss the claims against Bala Cynwyd.

**IV.**   **Conclusion**

For all of the foregoing reasons, defendants' motion (Doc. 30) will be denied.

An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        October 17, 2014